GLICKSTEIN, Judge,
dissenting.
A district court of appeal will not disturb a determination of a trial judge sitting as trier of fact where there is substantial competent evidence in support of the judge’s determination. Damiano v. Weinstein, 355 So.2d 819 (Fla. 3d DCA 1978).
The majority conceives a final judgment based upon a defense that the defendant corporation ceased operating a golf course which was never pled, and not mentioned by the defendant at the commencement of the trial, but that surfaced for the first time in brief testimony from the defendant’s witnesses and was briefly argued by defendant’s counsel in closing argument.
As a reviewing judge, I would affirm the trial court, which said in its final judgment:
*1010 In light of the fact that all Defendants named originally in this action have been dismissed, except the Defendant, Monte Carlo Management and Development Corporation, said Defendant is hereinafter simply referred to as the “Defendant”.
At the time of trial Plaintiff abandoned all claims against Defendant except the $3,000.00 monthly payments claimed to be due under a certain Employment Contract dated February 1, 1983, admitted into Evidence as Plaintiffs Exhibit No. 2 (the “Contract”), which abandonment included claims for interest, reasonable attorneys’ fees and future damages for anticipatory breach.
Further, at the time of trial, Defendant presented no testimony or evidence whatsoever in support of its Counterclaim and therefore the Court finds in favor of the Plaintiff and against the Defendant as to the Counterclaim.
As Defendant’s counsel stated in closing arguments, the first issue for the Court to decide is whether from the testimony and evidence presented, the Contract in fact constituted a legally sufficient contract between the parties.
This court feels there was competent and substantial evidence presented to find that the terms of the Contract were indeed agreed to between the parties on or about its stated date of February 1,
1983, and they included those provisions initialed by both the Plaintiff and the Defendant, through its President, Leopold Estein (“Estein”). This finding is buttressed by the fact that the parties mutually operated under the Contract from on or about its stated inception date of February 1, 1983, up to the time that Johnston Road Investments, Inc., acquired title to the golf course, clubhouse and other related equipment and facilities of what is known as Monte Carlo Country Club (“Monte Carlo”), which oc-cured [sic] in late summer or early fall of
1984. This mutual operation included, but was not limited to, work by the Plaintiff as the golf professional and regular monthly payments to Plaintiff from Defendant’s account funded by Sunrise Savings and Loan Association (“Sunrise”).
It is also apparent from the testimony of both Plaintiff and Estein that the proposed typed-in interlineations in the Contract on pages 4 and 5, came about after Estein discussed with Plaintiff the possibility that the Tournament Players Association or some other organization might be coming in to operate Monte Carlo and that Plaintiff's continued presence at the facility might be in jeopardy. All witnesses concurred this came about when various loans to Sunrise had become in default and “work-out” negotiations were taking place. All witnesses also concurred those negotiations took place during the summer of 1984, or about 1¾⅛ years after the stated inception date of the Contract.
In light of the time between the inception date of the contract and the “workout” negotiations which precipitated the proposed interlineations and the mutual operation under the other terms of the Contract during that period of time, the Court does not feel the proposed interlin-eations evidenced continued negotiations between the parties, so as to prevent a meeting of the minds between them as to the original terms of the Contract. It is clear the proposed interlineations were, in fact, proposed modifications to the existing Contract under which the parties had been operating for IV2 years. Since the proposed modifications were not accepted by the Defendant, they did not become a part of the Contract and must simply be ignored.
It is also clear that Plaintiff was ready and willing to continue performance under the Contract, but was prevented from doing so when a new organization took over operation of Monte Carlo. No substantial evidence was presented to support defendant’s contention that Plaintiff was terminated for cause. Plaintiff mitigated his damages to the greatest extent possible by working for the successor owner of Monte Carlo after its conveyance by Defendant, until he was terminated by a new operational organization.
*1011 The Court feels that adequate demand was made upon the Defendant by the Plaintiff and although there is some dispute as to when Defendant knew of the demand, unquestionably it received notice when its attorney, Dean Vegosen (“Vegosen”) received a copy of a letter from Kenneth A. Treadwell, General Counsel to Sunrise, dated February 14, 1985, (Plaintiffs Exhibit No. 1), which discussed Plaintiffs demands and which occured [sic] almost immediately after his termination at Monte Carlo. From the circumstances surrounding this controversy the Court simply cannot conceive the Defendant did not know about or receive Plaintiffs demand.
The evidence is undisputed that Plaintiff received no payments under the Contract from Defendant after it transferred Monte Carlo to Sunrise’s subsidiary, but continued to receive payments equal to those called for under the Contract through December 1984.
Therefore, the Court must consider whether there is any legal reason why Defendant did not have to continue payments to the Plaintiff.
Paragraph 30 of the Contract called for it to terminate in the event Defendant ceased business operations. There is a reference in clause 1 of the “Recitals” in the Contract that Defendant was in the business of owning a private country-club particularly located at 3001 Johnson Road, which, in fact, is the generalized location of the entire residential and golf club project known locally as “Monte Carlo”.
While Estein testified that Defendant no longer operates a country club, both Estein and Vegosen testified that Defendant was still conducting business operations and Estein said those operations included residential lots in the overall “Monte Carlo” project. The Court also notes that Paragraph 2 of the Contract calls for specific golf professional duties, plus additional unspecified generalized duties as may be assigned to Plaintiff by Defendant.
Certainly the pertinent portions of the Contract on this issue contain some ambiguities. But when considering Defendant’s business operations and Plaintiff’s duties in their entire context and the rule of law that ambiguities in a contract should be construed against the preparer of the instrument, which in this case was Defendant’s attorney, Vegosen, the Court finds that Defendant’s transfer of Monte Carlo did not terminate its obligations under the Contract.-
Defendant also raises the defense that Plaintiff waived his right to continued payments when he continued to work at Monte Carlo after the Defendant transferred it. Not only was this not plead as an Affirmative defense, but it flies in the face of another Affirmative Defense plead by Defendant, which was failure to mitigate damages. Accordingly, it is rejected.
The Court finds no merit to the other defenses raised by Defendant.
Based upon the foregoing, it is thereupon
ORDERED AND ADJUDGED as follows:
1. Plaintiff, Ray Montgomery shall have and recover from the Defendant, Monte Carlo Development and Management Corporation, the sum of $60,000.00, for which let execution issue. This Judgment shall bear interest at the rate of 12% per annum until paid.
2. Defendant, Monte Carlo Development and Management Corporation, shall take nothing from the Plaintiff, Ray Montgomery, on its Counterclaim and go hence without day.
3. This Court reserves jurisdiction to tax costs in this action as may be proper, but requests the parties to consult with each other as to appropriate taxable costs, so as to avoid an unnecessary hearing.